UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:24-cv-22654

MARY GOODENOUGH,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.

_____/

**COMPLAINT FOR DAMAGES**
**AND DEMAND FOR TRIAL BY JURY**

Plaintiff, MARY GOODENOUGH (hereinafter "GOODENOUGH"), through undersigned counsel, sues Defendant, CARNIVAL CORPORATION, (hereinafter "CARNIVAL"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

1. GOODENOUGH seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

2. This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

4. Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by CARNIVAL.

5. GOODENOUGH is *sui juris* and is a resident and citizen of the state of Tennessee.

6.  CARNIVAL is a citizen of the state of Florida and the nations of Panama and the United Kingdom.

7.  CARNIVAL is a foreign corporation that is authorized to conduct and that does conduct business in the state of Florida, that at all times material hereto was and is doing business in Miami-Dade County, Florida, and that maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

8.  CARNIVAL, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

a.  Operated, conducted, engaged in, or carried on a business venture; and/or

b.  Had an office or agency; and/or

c.  Engaged in substantial activity; and/or

d.  Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9.  All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

**FACTUAL ALLEGATIONS**

10. At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, *the Spirit*.

11. At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject area involved in GOODENOUGH'SS incident.

12. GOODENOUGH'S incident occurred on or about November 2, 2023, while she was a fare paying passenger on CARNIVAL'S vessel, *the Spirit*.

13. On or about November 2, 2023, between approximately 8:00-9:00 P.M., GOODENOUGH was walking on the carpeted ground on Deck 9, heading from the interior to the exterior of the ship, when she suddenly tripped over a protruding and exposed lip/threshold of a tile where it met the carpet. There was no transition strip present to prevent or mitigate the danger of this lip/threshold.

14. As a result, GOODENOUGH sustained severe injuries that include, but are not limited to, midshaft oblique left femur fracture, and other possible injuries.

15. At all relevant times, the risk-creating and/or dangerous condition was the lip/threshold of the tile where it met the carpet. This protruding and exposed lip/threshold created a tripping hazard that led to GOODENOUGH's fall.

16. This dangerous condition caused GOODENOUGH'S incident and injuries because it caused her to trip and fall.

17. CARNIVAL either knew or should have known of this risk-creating and/or dangerous condition, due to reasons that include, but are not limited to, the following:

   a. CARNIVAL participated in the placement and/or maintenance of the subject tile, or alternatively, CARNIVAL accepted the presence of the lip/threshold with its unreasonably protrusion and lack of any transition strip or similar safety measure to prevent it from being exposed, after having been given an opportunity to inspect the ship and materials on it, including the subject tile, such that CARNIVAL should have known of the unreasonably hazardous placement of the lip/threshold before providing the area for public use.

   b. There are relevant safety standards, recommendations, and other guidelines regarding the safety of the subject area, including OSHA regulations, which require that all

walkways be maintained in a clean, orderly, and hazard-free condition. These guidelines prohibit hazardous conditions such as an uneven lip/threshold without a transition strip in areas where passengers walk, as it creates a tripping hazard. According to OSHA's General Requirements for Walking-Working Surfaces (29 CFR 1910.22)[1], walkways must be kept free of hazards such as protruding objects. CARNIVAL should have known of these standards, recommendations, and guidelines because, whether such standards, recommendations, and guidelines are legally required for CARNIVAL to comply with or not, a fact finder is entitled to determine, if it so chooses, that these standards, recommendations, and guidelines show what a reasonable cruise line should have done. It is reasonable to expect that CARNIVAL's own safety protocols would require walkways to be clear of obstructions, as this is a common safety standard in the industry. The absence of a transition strip at the tile and carpet junction in a walkway area would likely fall below the safety standards designated for the safety of its passengers.

c.  CARNIVAL also knew or should have known of this dangerous condition through inspecting the subject area involved in GOODENOUGH'S incident, and if it did not know of this dangerous condition, this was because CARNIVAL failed to adequately inspect the subject area prior to GOODENOUGH'S incident.

d.  Previous passengers in prior cases suffered prior trip and fall incidents involving the obstructing objects on the same ship and other ships in CARNIVAL'S fleet (including Carnival Cruise Line, Princess Cruises, Holland America Line, Seabourn, P&O Cruises (Australia), Costa Cruises, AIDA Cruises, P&O Cruises (UK) and Cunard),

---

[1] https://www.osha.gov/laws-regs/regulations/standardnumber/1910/1910.22

including, but not limited to *Foley v. Carnival Corp.*, No. 23-CV-23025, 2024 WL 361189, at \*1 (S.D. Fla. Jan. 31, 2024) ("On March 19, 2022, Plaintiff exited a mid-ship elevator on Deck 9, the Lido Deck, of the M/S Sunshine when **she 'tripped and fell over an uneven and/or raised threshold or transition strip between a carpeted surface and a tile surface, which was situated in a manner that was not flush with the surrounding floor**, causing Plaintiff to sustain significant injuries, including without limitation, to her left leg.' Id. ¶ 13.") (emphasis added).; see also Vaughan v. Carnival, Case 1:23-cv-22872-JEM, Docket Entry No. 1, at p. 3 ("On or about March 15, 2023, as VAUGHAN traversed the main dining room in a normal and proper manner, **she stepped on a sunken piece of the carpet, which was on floor that was uneven**, and rolled her ankle. As a result, when VAUGHAN fell, she injured her left ankle.") (emphasis added).

e. Moreover, CARNIVAL knew or should have known of this dangerous condition for other reasons that will be revealed through discovery.

18. At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, and/or otherwise unsafe.

19. The subject area and the vicinity lacked adequate safety features to prevent or minimize GOODENOUGH'S incident and/or injuries.

20. The dangerous condition was known, or should have been known, to CARNIVAL in the exercise of reasonable care.

21. The dangerous condition existed for a period of time before the incident.

22. The dangerous condition were not open nor obvious to reasonable passengers, including GOODENOUGH, and CARNIVAL failed to adequately warn GOODENOUGH of the danger.

23. At all times relevant, CARNIVAL failed to adequately maintain a safe walkway free of obstructions. According to industry standards and its own general safety protocols, CARNIVAL was required to ensure that all walkways were kept clear of objects and potential tripping hazards through regular inspections. However, CARNIVAL failed to conduct these inspections as required, thereby allowing a hazardous condition—specifically, an uneven lip/threshold without a transition strip—to remain in the walkway and causing GOODENOUGH to trip and fall.

24. At all times relevant, CARNIVAL had the ability to remedy the dangerous condition, but failed to do so. For example, CARNIVAL could have installed a transition strip or taken measures to block off the location of the hazardous lip/threshold but failed to do so.

25. At all times relevant, CARNIVAL failed to maintain the walkway in a reasonably safe condition, thereby creating a dangerous situation. Specifically, CARNIVAL failed to perform regular inspections and upkeep of the walkway area, including, but not limited to, failing to address the uneven lip/threshold without a transition strip that was present in the walkway. This failure to address the hazard resulted in GOODENOUGH tripping and falling.

26. At all times relevant, CARNIVAL participated in the design and/or approved the design of the subject area and the vicinity involved in GOODENOUGH's incident, including the design and maintenance of the walkway area where the hazardous lip/threshold was located.

27. At all times relevant, CARNIVAL participated in the installation and/or approved the installation of the subject area and the vicinity involved in GOODENOUGH's incident, including the placement and maintenance of the walkway and the design of the lip/threshold.

28. The crewmembers of *the Spirit* were in regular full-time employment of CARNIVAL and/or the ship, as salaried crewmembers.

29. CARNIVAL's crewmembers, employees, and/or agents were subject to the ship's discipline and master's orders, and CARNIVAL had the right to hire and fire its crewmembers, employees, and/or agents.

30. CARNIVAL is directly responsible and liable for their actions and the actions of its crewmembers, employees, and/or agents.

31. The crewmembers, including the medical staff, were employees and agents of CARNIVAL, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

## COUNT I
## NEGLIGENT FAILURE TO REMEDY

32. GOODENOUGH hereby adopts and re-alleges each and every allegation in paragraphs 1-25 as if set forth herein.

33. CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

34. This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the dangerous condition.

35. At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to GOODENOUGH and were negligent by failing to adequately remedy the dangerous condition.

36. CARNIVAL either knew or should have known of this risk-creating and/or dangerous condition, due to reasons that include, but are not limited to, the reasons discussed in paragraph 18.

37. Moreover, this risk-creating and/or dangerous condition was caused by

CARNIVAL'S failure to adequately remedy the dangerous condition.

38. CARNIVAL'S breach was the cause in-fact of GOODENOUGH'S great bodily harm in that, but for CARNIVAL'S breach GOODENOUGH'S injuries would not have occurred.

39. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

40. CARNIVAL'S breach proximately caused GOODENOUGH great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

41. As a result of CARNIVAL'S negligence, GOODENOUGH has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of GOODENOUGH'S vacation, cruise, and transportation costs.

42. The losses are permanent and/or continuing in nature.

43. GOODENOUGH has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, MARY GOODENOUGH, demands judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that GOODENOUGH will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of important bodily functions, loss of independence, lost wages, lost earning capacity, and loss of capacity for the enjoyment of life, for

all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT II
## <u>NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION</u>

44. GOODENOUGH hereby adopts and re-alleges each and every allegation in paragraphs 1-22 as if set forth herein.

45. At all times relevant, CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including GOODENOUGH.

46. Such duty includes, but is not limited to, the duty that CARNIVAL owes to warn passengers of any dangers that it knew or should have known were not open and obvious to GOODENOUGH.

47. Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

48. At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to GOODENOUGH and was negligent by failing to warn GOODENOUGH of the dangerous condition.

49. Furthermore, CARNIVAL knew or should have known of this dangerous condition for the reasons discussed in paragraph 18.

50. This dangerous condition was also created by CARNIVAL.

51. CARNIVAL failed to adequately ensure there was no dangerous condition that passengers needed to be warned of, and/or CARNIVAL failed to warn GOODENOUGH despite knowing of the danger.

52. This dangerous condition existed for a period of time before the incident.

53. This dangerous condition was neither open nor obvious to GOODENOUGH.

54. CARNIVAL'S breach was the cause in-fact of GOODENOUGH'S great bodily harm in that, but for CARNIVAL'S breach GOODENOUGH'S injuries would not have occurred.

55. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

56. CARNIVAL'S breach proximately caused GOODENOUGH great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

57. As a result of CARNIVAL'S negligence, GOODENOUGH has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of GOODENOUGH'S vacation, cruise, and transportation costs.

58. The losses are permanent and/or continuing in nature.

59. GOODENOUGH has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MARY GOODENOUGH, demands judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that GOODENOUGH will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of important bodily functions, loss of independence, lost wages, lost earning capacity, and loss of capacity for the enjoyment of life, for

all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT III**
**NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE**
**LIP/THRESHOLD IN THE WALKWAY AREA.**

60. GOODENOUGH hereby adopts and re-alleges each and every allegation in paragraphs 1-22, 26-27, as if set forth herein.

61. CARNIVAL negligently designed, installed, or, in the alternative, approved the installation of the lip/threshold in the walkway area. CARNIVAL either installed the lip/threshold or failed to ensure that the transition area was properly maintained, even though this created an unreasonable tripping hazard. This negligence was in violation of CARNIVAL's own safety policies and procedures, as well as industry standards for maintaining clear and safe walkways, which resulted in GOODENOUGH tripping over the lip/threshold and sustaining injuries.

62. CARNIVAL should have ensured the design and layout of the walkway area were free from hazardous obstructions such as the uneven lip/threshold. Alternatively, CARNIVAL should not have approved the installation of the lip/threshold without a proper transition strip, given the foreseeable risk of tripping. Therefore, CARNIVAL is liable for the negligence in designing, or in the alternative, approving the use of the subject area with these hazardous conditions present, which led to GOODENOUGH's trip and subsequent injuries.

63. At all times material hereto, CARNIVAL owed a duty to its passengers, and in particular a duty to GOODENOUGH, not to permit a dangerous condition to be in a place where it could harm passengers, as well as to design and install reasonable safeguards.

64. At all times material hereto, CARNIVAL participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and to put the

vessel on which GOODENOUGH was injured into the channels of trade, and/or CARNIVAL approved of the subject vessel's design, including the design of the subject area and the vicinity.

65. At all times material hereto, CARNIVAL manufactured, designed, installed, and/or approved of *the Spirit*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishment. As such, CARNIVAL owed a duty to its passengers, and in particular a duty to GOODENOUGH, to ensure that the design and installation of all fixtures and equipment, including the design and installation of the lip/threshold, were such that they were not unreasonably hazardous at the time of GOODENOUGH's incident.

66. At all times material hereto, CARNIVAL, through its agents and/or employees who were acting in the course and scope of their employment and/or agency with CARNIVAL, designed, installed, and/or approved of the placement and installation of the lip/threshold involved in GOODENOUGH'S incident, which was also in violation of the applicable industry standards, recommendations, and/or other guidelines.

67. CARNIVAL provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject area and the vicinity.

68. CARNIVAL maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including *the Spirit*, during the new build process.

69. CARNIVAL has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

70. CARNIVAL has the right to inspect and reject design elements before taking possession of the ship.

71. However, CARNIVAL permitted the dangerous condition to be present in the subject area and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

72. Furthermore, CARNIVAL knew or should have known of the dangerous condition for the reasons discussed in paragraph 18.

73. The design flaws and improper installation of the lip/threshold involved in GOODENOUGH'S incident made the area unreasonably dangerous and were the direct and proximate cause of GOODENOUGH'S injuries.

74. CARNIVAL is liable for the design flaws of the vessel, including the improper installation and maintenance of the lip/threshold involved in GOODENOUGH'S incident, which it knew or should have known of.

75. CARNIVAL failed to correct and/or remedy the defective condition, despite the fact that CARNIVAL knew or should have known of the danger.

76. CARNIVAL'S breach was the cause in-fact of GOODENOUGH'S great bodily harm in that, but for CARNIVAL'S breach GOODENOUGH'S injuries would not have occurred.

77. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

78. CARNIVAL'S breach proximately caused GOODENOUGH great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

79. As a result of CARNIVAL'S negligence, GOODENOUGH has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of

independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of GOODENOUGH'S vacation, cruise, and transportation costs.

80. The losses are permanent and/or continuing in nature.

81. GOODENOUGH has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, MARY GOODENOUGH, demands judgment against Defendant, CARNIVAL CORPORATION, for damages suffered and costs incurred, as well as for damages and costs that GOODENOUGH will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of important bodily functions, loss of independence, lost wages, lost earning capacity, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff, MARY GOODENOUGH, demands trial by jury on all issues so triable.

**Dated:** July 12, 2024.

Respectfully submitted,

<u>*/s/ Matthias M. Hayashi*</u>
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com

**ARONFELD TRIAL LAWYERS**
Aronfeld.com
**Page 14 of 15**

**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
*Attorneys for GOODENOUGH*