UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-22654-CIV-ALTONAGA/Reid

MARY GOODENOUGH,

      Plaintiff,

v.

CARNIVAL CORPORATION,

      Defendant.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**

**MOTION FOR SUMMARY JUDGMENT**

Plaintiff, MARY GOODENOUGH (hereinafter referred to as "GOODENOUGH"), by and through her undersigned counsel, and Fed. R. Civ. P. 56(a), responds to Defendant CARNIVAL CORPORATION's (hereinafter referred to as "CARNIVAL") motion for summary judgment. In support of her response, GOODENOUGH states as follows:

**I. FACTS**

Between June 24, 2019, and September 3, 2023, CARNIVAL documented thirteen (13) prior incidents of passengers tripping and falling over a specific type of carpet-to-tile transition lip on cruise ships in its fleet. See CARNIVAL'S Fourth Supplemental Answers to GOODENOUGH'S Interrogatories, [DE 41-1 at pp. 3-5]; see also Prior Complaints Produced by CARNIVAL, [DE 41-2]; see also [DE 34 at p. 1].

Despite knowing that this type of carpet-to-tile transition lip caused at least thirteen (13) prior trip and fall incidents, CARNIVAL did nothing to block off, warn of, or correct this danger. On November 2, 2023, GOODENOUGH tripped and fell on this same type of carpet-to-tile transition aboard the Carnival *Spirit*. [DE 37-1 at 22:15-19, 34:21-24, 38:24-39:11, 47:21-48:4, 68:6-69:22].

Then, on November 10, 2023, just eight (8) days after GOODENOUGH'S incident, CARNIVAL removed the carpet and lip involved in GOODENOUGH'S incident, completely and permanently changing the configuration of the subject area, and CARNIVAL did not notify

GOODENOUGH until over a year later. See [DE 37-3 at 48:4-17, 50:8-20, 54:3-25, 58:11-59:7, 69:16-70:24, 105:4-23, 107:17-108:15, 118:17-119:21].

Despite this abundant evidence of notice, CARNIVAL moves for summary judgment, claiming that GOODENOUGH does not have any evidence of notice. GOODENOUGH has abundant evidence of notice, and CARNIVAL'S motion for summary judgment should be denied.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate **only** when the pleadings, depositions, affidavits, and exhibits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c); *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F. 3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.*

When evaluating a motion for summary judgment, a court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether the evidence could reasonably sustain a jury verdict for the nonmovant. *Celotex*, 477 U.S. at 322-23; *Tyson*, 121 F.3d at 646.

"[O]nce the moving party has met its burden of showing a basis for the motion, the nonmoving party is required to 'go beyond the pleadings' and present competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" *United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [instead] must set forth specific facts showing that there is a genuine issue for trial." *See Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505 at 2510 (1986). "Likewise, a [nonmovant] cannot defeat summary judgment by relying upon conclusory assertions." *Maddox Jones v. Bd. of Regents of Univ. of Ga.*, 2011 WL 5903518, at *2 (11th Cir. Nov. 22, 2011).

### III. THERE IS ABUNDANT EVIDENCE OF NOTICE

CARNIVAL argues that there is allegedly no evidence of notice. However, there is abundant evidence of notice, and therefore CARNIVAL's motion for summary judgment must be denied.

*a.    GOODENOUGH has thirteen (13) prior substantially similar incidents*

Here, GOODENOUGH has evidence of the following prior substantially similar incidents on CARNIVAL'S cruise ships.

| # | Date | Name | Location | Description | Litigation |
|---|------|------|----------|-------------|------------|
| 1 | January 19, 2020 | Leonie Forbesscott | *Fascination*, Lido Restaurant | 77 year-old Guest reported that around 1:15 p.m. while walking at Deck 10 aft center from aft fwd, her right foot stuck on carpeted floor and she fell forward. She claimed there was a problem with the metal strip between the carpet and tile. She was wearing tennis shoes. She sustained a contusion to her right knee. | No |
| 2 | January 27, 2020 | Helen Downard | *Glory*, Barbeque Area, Deck 10 | 74 year-old Guest claimed that around 10:30 a.m. she was walking inside the Barbeque area located at Deck 10 aft, starboard side on the carpeted floor, and she tripped in between the joining of the carpet and tiled floor. She was wearing tennis shoes. She sustained a sprain and strain to her left knee. | No |
| 3 | February 23, 2020 | Vida Vujasin | *Spirit*, La Playa Grill Lido Restaurant | 82 year-old Guest claimed that around 11:10 a.m., while walking inside the La Playa Grill Restaurant on Deck 9 aft portside, she accidentally tripped onto joining strip of carpeted floor edge and tiled floor. She was wearing rubber shoes. | No |

| 4 | October 15, 2021 | Sheila Watkins | *Dream*, Lido Restaurant | 73 year-old Guest claimed that around 10:40 a.m., while walking near the Swirls Ice Cream machine, she allegedly tripped on the metal strip that separates carpeted floor and the tiled floor. She fell forward and hit her left elbow on the tiled floor. She was wearing Sketcher shoes. | No |
| 5 | March 10, 2022 | Robert Tuite | *Sunshine*, Lido Restaurant | 80 year-old Guest claimed that around 7:55 a.m. while walking inside the Lido Deck Marketplace towards a coffee machine, he accidentally tripped on the metal strip in between carpeted and tiled floor. Onboard he claimed he sustained injuries to his forehead, right knee, right shoulder, and right chest. He was wearing sneakers. | Yes |
| 6 | April 8, 2023 | Julie Hahn | *Elation*, Lido Restaurant | 42 year-old Guest claimed that while walking inside the Tiffany Restaurant, Lido Deck 10 port side, she tripped over the metal edge between the carpet and tiled floor and fell on her right knee on the tiled floor. She | No |
| | | | | sustained a superficial abrasion to both knees. She was wearing flip flops. | |

| 7 | June 23, 2023 | Martin Hayburn | *Legend*, Unicorn Restaurant, Deck 9 | 56 year-old Guest reported that between 10 a.m. and 12 p.m., after passing through a sliding glass door while entering the Unicorn Restaurant on Deck 9, he tripped on a metal frame surrounding a carpeted floor, lost his balance and fell forward on a marble/granite floor. He sustained a sprain/strain injury to his right rib. He was wearing flip flops at the time.<br><br>The incident was not reported until June 24, 2023 at 2:00 p.m. Investigation indicated four (4) "Cheers Program" transactions for Mr. Hayburn for "Cosmo Martini" between 8:03 a.m. and 10:48 a.m. on June 23, 2023. | No |
| 8 | September 3, 2023 | Rosa Goroni | *Glory*, Deck 10 Barbeque Restaurant | 60 year-old Guest claimed that around 11:35 p.m. while walking inside the barbeque restaurant, she allegedly tripped on the metal frame (joint between carpet and tiled floor). She landed on both knees on tiled floor and sustained injury to her right knee. She was wearing sandals. | Yes |

See CARNIVAL'S Fourth Supplemental Answers to GOODENOUGH'S Interrogatories, [DE 41-1 at pp. 3-5].

| Ship | Sail Date | Last Name | First Name | Summary |
|------|-----------|-----------|------------|---------|
| Carnival Inspiration | 6/24/2019 | CANO | OMAR | On our last day we were walking towards the buffet area ready to leave the ship and my daughter tripped on the trim that's on the floor between door ways or carpet to tile transition. I think its called either a carpet trim or a saddle threshold. It was raised off the floor and my daughter 1 1/2 year old tripped and hit her head on the floor. |
| Carnival Elation | 11/2/2019 | STERNER | KENNETH | I had tripped in the Tiffany Lounge where the carpet meets the tile. I had fallen down hitting my new along the tile leaving a bruise along with a scrapped knee. None of the employees seemed to know what to do. All I wanted was a bag of ice which took about ten minutes. Then they encouraged me to go the medical unfortunately the path down was block for we docked. I was not able to go down the stairs because of my knee. My husband went down to ask if the could open the elevator and was told to wait for the elevators to open. My husband convinced one employee to open the elevator to help me. |
| Mardi Gras | 9/4/2021 | BERG | DIANA | Some of the metal strips in the carpeting had a lip which caused my companion to be thrown from her wheelchair. She was thrown out of her chair as she was boarding and throughout the cruise we hit several more on the ship. |
| Carnival Elation | 6/4/2022 | PARHAM | BRIAN | A few tripping hazards on boat. My mother actually fell once due to metal strip in hallways on carpets being elevated and movement of boat. |
| Carnival Vista | 6/24/2023 | MARTINEZ | RHIANA | Just needed to be extra careful when walking on floors due to picked up tiles or metal pieces on carpet. Tripping hazard. |

**5**

**ARONFELD TRIAL LAWYERS**

Aronfeld.com

See Prior Complaints Produced by CARNIVAL, [DE 41-2].

These prior incidents put CARNIVAL on notice that its carpet-to-tile transition lips are unreasonably dangerous. In this regard, GOODENOUGH notes that the order following the discovery hearing on February 27, 2025 in this case, specifically stated that:

> Defendant shall contact the ships within its fleet with a photograph of the accident area to inquire as to whether there is a **similar carpet-to-tile transition on each ship**. If the ship responds affirmatively, Defendant will run a search for prior tripping incidents on those transitions and passenger complaints for that ship for the five-year period preceding Plaintiff's incident.

[DE 34 at p. 1] (emphasis added). CARNIVAL disclosed the above prior incidents in compliance with this order, and therefore represents that the carpet-to-tile transitions in these incidents is similar to the one involved in GOODENOUGH'S incident.

While CARNIVAL may argue that the circumstances regarding these incidents might not have been completely "identical" to GOODENOUGH'S incident, "substantial similarity" is the standard, not identicality. *Weeks v. Remington Arms Co., Inc.*, 733 F.2d 1485, 1491-92 (11th Cir. 1984); *Ramos v. Liberty Mut'l Ins. Co.*, 615 F.2d 334, 339 (5th Cir. 1980). Here, these prior incidents all share the same cause as GOODENOUGH'S incident, namely the lips between substantially similar carpets and tiles on CARNIVAL'S ships, and this is substantially similar enough for the jury to consider these incidents. *Croskey v. BMW of North America, Inc.*, 532 F.3d 511, 518 (6th Cir. 2008) (Substantial similarity means that the incidents must have occurred under similar circumstances **or** share the same cause); *see also Hessen for Use & Benefit of Allstate Ins. Co. v. Jaguar Cars, Inc.*, 915 F.2d 641, 649 (11th Cir. 1990)).

Moreover, in Helen Downard's incident, she she "tripped in between the joining of the carpet and tiled floor." See [DE 41-1 at pp. 3-4]. **This is exactly what GOODENOUGH described happened to her**. [DE 37-1 at 38:24-39:11, 47:21-48:4, 68:6-69:22]. As such, a reasonable jury can find based on this evidence that CARNIVAL should have known of the danger of this type of carpet-to-tile transition lip, and that CARNIVAL should have taken further safety precautions such as using metal strips that were flush with both the tile and carpets' surfaces. For this reason alone, CARNIVAL'S motion must be denied.

*b. Legal standard for prior substantially similar incidents*

Evidence of a substantially similar prior incident is sufficient to establish that a defendant was on notice of a risk creating condition. *See*, *e.g.*, *Beretta v. Home Lines, Inc.*, No. 88 CIV.

7436 (LBS), 1990 WL 91737, at *3 (S.D.N.Y. June 26, 1990) (**one incident is sufficient to a create question of fact on notice**) (emphasis added); see also *Reed v. Royal Caribbean Cruises, Ltd.*, No. 19-24668-CIV, 2021 WL 4990902, at *16 (S.D. Fla. Aug. 20, 2021). Such prior incidents only need to be "substantially similar," not identical. *Weeks v. Remington Arms Co., Inc.*, 733 F.2d 1485, 1491-92 (11th Cir. 1984); *Ramos v. Liberty Mut'l Ins. Co.*, 615 F.2d 334, 339 (5th Cir. 1980). When evidence of similar incidences is used to establish notice, "the rule requiring substantial similarity of those accidents to the accident at issue should be relaxed." *Jackson v. Firestone Tire and Rubber Co.*, 788 F. 2d 1070, 1083 (5th Cir. 1986); *Schmelzer v. Hilton Hotels Corp.*, 2007 WL 2826628, at *2 (S.D.N.Y. 2007). Substantial similarity means that the incidents must have occurred under similar circumstances **or** share the same cause. *Croskey v. BMW of North America, Inc.*, 532 F.3d 511, 518 (6th Cir. 2008); *see also Hessen for Use & Benefit of Allstate Ins. Co. v. Jaguar Cars, Inc.*, 915 F.2d 641, 649 (11th Cir. 1990)).

On July 15, 2020, this Honorable Court considered a case where a plaintiff was injured by a person falling on her on a gangway when a "man suddenly stopped and punched his wife/girlfriend in the head[.]" See Response to CARNIVAL'S Motion in *Limine* Seeking to Preclude Prior Incidents in *Gould v. Carnival*, 1:19-cv-20289-**CMA** (June 30, 2020), Exhibit 1 at p. 3. In *Gould*, CARNIVAL sought to exclude two prior incidents since the plaintiff did not have any other material information about them, other than that these prior incidents involved fights where passengers were injured on CARNIVAL'S gangways. See CARNIVAL'S Motion in *Limine* in *Gould v. Carnival*, 1:19-cv-20289-**CMA** (June 18, 2020), Exhibit 2 at pp. 2-4; see also CARNIVAL'S Reply in Support of its Motion in *Limine* in *Gould v. Carnival*, 1:19-cv-20289-**CMA** (July 7, 2020), Exhibit 3 at pp. 1-3.

The only information regarding the two prior incidents in *Gould v. Carnival* was:

| Ship | Sail Date | Comment |
|------|-----------|---------|
| Panorama | 12/24/2017 | Guest had a fight on the gangway while debarking the ship in Tampa. |
| Liberty | 12/15/2016 | Claims a fight broke out, woman almost pushing someone off the gangway. |

See CARNIVAL'S Supplemental Answer to Interrogatory in *Gould v. Carnival*, 1:19-cv-20289-**CMA** (June 2, 2020), Exhibit 4 at p. 3.

The plaintiff argued that "regardless of the circumstances surrounding these fights, [CARNIVAL] knew that fights were a danger to passengers on its gangways, which should have

alerted it to the need to have security that was vigilantly looking out for signs of fights that might occur on its gangways, yet it did nothing for over a year." See Exhibit 1 at p. 7. Ultimately, it didn't matter that these prior incidents involved different gangways with different belligerents, what mattered was simply the fact that CARNIVAL had notice that fights broke out on its gangways previously, yet did nothing about this. **This Honorable considered the evidence and arguments, and found that these prior incidents were admissible as evidence of notice**. See Order on CARNIVAL'S Motion in *Limine* in *Gould v. Carnival*, 1:19-cv-20289-**CMA** (July 15, 2020), Exhibit 5 at p. 1.

> Moreover, as the court in LaRocco v. Royal Caribbean Cruises Ltd. found,

> Here, Royal Caribbean disclosed 25 similar incidents that occurred between July 20, 2017 and May 14, 2022 on "its fleet of ships limited to pool decks covered with Bolidt – Future Teadk." [ECF Nos. 28; 42 at 11]. Passengers reported suffering "burns to the soles of feet," "blistering to soles of feet," or "discomfort/pain of feet" after walking on the pool deck. [ECF No. 42 at 11]. Royal Caribbean argues these incidents are inadmissible as they are not substantially similar because none of the passengers suffered from neuropathy like Plaintiff. But, as the Eleventh Circuit has explained, the substantial similarity doctrine does not require identical circumstances. Sorrels, 796 F.3d at 1287. The doctrine "allows for some play in the joints depending on the scenario presented and the desired use of the evidence." Id.

> **The conditions surrounding the incidents need only be similar enough to allow a reasonable inference regarding Royal Caribbean's ability to foresee this type of accident and its results**. See id. The Court finds that the conditions surrounding the incidents are similar enough to allow Royal Caribbean to foresee that the Bolidt – Future Teadk pool deck surface might become excessively hot and cause passengers using reasonable care to burn the soles of their feet.

*LaRocco v. Royal Caribbean Cruises Ltd*., No. 23-CV-20777, 2024 WL 843335, at *5 (S.D. Fla. Feb. 12, 2024) (emphasis added), report and recommendation adopted, No. 23-20777-CV, 2024 WL 836829 (S.D. Fla. Feb. 28, 2024).

Furthermore, as the court in *Birren v. Royal Caribbean, Ltd*., Case 1:20-cv-22783-BB, (S.D. Fla. Feb. 28, 2022) found,

> Regarding the timeliness prong, courts have previously admitted into evidence prior incidents dating back to four years before the incident in question. See Hessen, 915 F.2d at 642. Regarding the substantial similarity prong, the Eleventh Circuit determined in *Taiariol v. MSC Crociere S.A*., 677 F. App'x 599, 601 (11th Cir. 2017), that prior incidents did not have to take place at the same location, and that evidence of prior incidents at a different location could be admissible as long

**8**
**ARONFELD TRIAL LAWYERS**
[Aronfeld.com](Aronfeld.com)

as the proponent of the evidence sufficiently demonstrated similarities between the incidents. **The Eleventh Circuit further elaborated in _Bunch v. Carnival Corp_., 825 F. App'x 713, 718 (11th Cir. 2020), that an incident at a particular cruise ship deck could give the cruise-line notice of similar dangers of a different deck**. Applying the Eleventh Circuit's standard for substantial similarity, the Court now turns to the twenty-seven (27) prior incidents in this case.

First, all the prior incidents occurred within a three-year period before Plaintiffs' incident. See ECF No. [103-1] at 45-46. Defendant does not argue that the prior incidents were too remote in time. See generally ECF No. [88]. Therefore, the Court determines that the prior incidents are not too remote in time. See Hessen, 915 F.2d at 642.

Second, Plaintiffs claim to have suffered injuries when an elevator door struck Plaintiff Kathryn Birren, who then collided with her daughter, Plaintiff Mandy Birren, when Plaintiffs exited the elevator in question. See ECF Nos. [89] ¶ 2; [105] ¶ 2; see also ECF No. [73]. All the prior incidents similarly involve injuries caused by elevator doors on Defendant's vessels closing on passengers as they enter or exit elevators. See ECF No. [103-1] at 45-46. **As such, the prior incidents are substantially similar to the extent that they could have given Defendant notice of malfunctioning elevator doors on all of its vessels**. _See Hessen_, at 915 F.2d at 650.

See Order on Motions in Limine in _Birren v. Royal Caribbean, Ltd_., Exhibit 6 at pp. 5-7 (emphasis added); _see also Bunch v. Carnival Corp_., 825 F. App'x 713, 715-719 (11th Cir. 2020).

Moreover, as another court in this district held,

NCL's cooperative representative testified that at least four passengers have had incidents on the same staircase between May 17, 2018 and June 30, 2018—all before Plaintiff's incident. . . . Although the details on the prior incidents are thin, the Court finds that the evidence presented by Plaintiff is just enough of a triable issue of fact regarding whether NCL had actual or constructive notice that these stairs, when wet, presented a dangerous condition.

_See Hoover v. NCL (Bahamas) Ltd_., 491 F. Supp. 3d 1254, 1257 (S.D. Fla. 2020).

Finally, another court in this district found that if prior incidents share a key similarity with the incident at issue, such as each involving tiled floors, and if the defendant cannot discount the apparent similarity of the prior incidents, then those incidents are similar enough for the jury to consider in deciding the issue of notice. As the court held,

The Undersigned finds that at least some of the prior incidents cited by Plaintiff were substantially similar to Plaintiff's incident. Although Defendant relies on the

testimony of its corporate representative to argue that the flooring across this class of ships is different, the Undersigned finds the testimony of Defendant's corporate representative vague. Defendant's corporate representative's testimony is that different types of tile existed between the ships in this class. However, this testimony is not sufficiently detailed enough to determine which ships had similar tile to the Carnival Valor and which ships did not. Thus, this testimony is not particularly helpful in discounting the prior incidents which occurred on other ships in this class. At bottom, the testimony is that all of the prior incidents involved falls on tile.

*Darby v. Carnival Corp.*, No. 19-21219-CIV, 2021 WL 6424631, at *7 (S.D. Fla. Dec. 3, 2021).

In fact, another court in this district found, in an ice-skating case involving a similar curated list of prior incidents with only certain information provided, that

> as noted in Plaintiff's Response, a number of the prior incident reports reflect that passengers complained that the condition of the ice caused them to fall, on ships that were of the same class as the vessel at issue in this case. See ECF No. [152] at 8-9.6 In its Reply, the Defendant again argues that the prior incidents are not similar enough to establish notice because none of the prior incidents involve the conditions in this case, including a defect or damage in the ice itself, ECF No. [158] at 5.
> . . .
> The undersigned has reviewed the descriptions provided by the Defendant regarding the prior incidents and concludes that the incidents are **similar enough to raise a genuine issue of fact regarding whether the Defendant had constructive notice that ice that was either choppy or contained gouges might present an unreasonably dangerous condition**. *Cf Taiariol v. MSC Crociere, S.A.*, No. 0:15-cv-61131-KMM, 2016 WL 1428942, *5 (S.D. Fla. April 12, 2016) (finding that falls were not substantially similar to put defendant on notice where prior incident falls occurred on defendant's ships generally, but did not reveal whether falls occurred on either metal stair "nosings" or in theater where plaintiff in that case fell). Specifically, the falls cited by Plaintiff involved "choppy ice on the Studio B ice skating rink", a fall where "there was a small hole 1cm. deep on the ice floor that [the passenger] tripped on", and three separate falls on "bumpy ice", "uneven ice" and "rough ice." In all of those falls, presumably, the injured party had ice skates on that were issued by RCL, was skating on ice that was maintained by the same equipment used in the case at bar, and was maintained pursuant to RCL's policies in the same manner that the ice was maintained in this case. Thus, Defendant had notice that the failure to maintain the ice properly, as alleged by the Plaintiff in this case might create an unreasonably dangerous condition. *See Gorczyca v. MSC Cruise, S.A.*, No. 16-15491, 2017 WL 5125561, *2 (11th Cir. 2017) (stating that proper inquiry regarding whether a cruise ship has constructive notice of an alleged dangerous condition based upon prior accidents is not whether a defendant had notice of an object or its physical specifications, but whether the defendant had notice of a risk-creating condition).

*Lebron v. Royal Caribbean Cruises, Ltd*., No. 16-24687-CIV, 2018 WL 5113943, at *7–8 (S.D. Fla. Aug. 14, 2018) (emphasis added), report and recommendation adopted sub nom. *Lebron v. Royal Carribean Cruises Ltd*., No. 16-24687-CIV, 2018 WL 5098870 (S.D. Fla. Aug. 28, 2018); see also Fisher v. Bumbo Int'l Tr., No. 1:14-CV-22209-UU, 2014 WL 12042519, at *6 (S.D. Fla. Aug. 27, 2014); *see also Whelan v. Royal Caribbean Cruises Ltd*., No. 1:12-CV-22481-UU, 2013 WL 5583966, at *3 (S.D. Fla. Aug. 16, 2013) (Prior incidents even beyond five years old are potentially still relevant) (Ungaro, J.); *see also Johnson v. Carnival Corp*., No. 07-20147-CIV, 2007 WL 9624460, at *1 (S.D. Fla. Dec. 18, 2007) ("That the incidents range in time over the past **twenty years** does not make them too remote; actually it could indicate that Defendant has been aware of such violations of its "No Diving" policy for many years. It is also inconsequential that very few of the prior incidents resulted in serious injury because Plaintiff is only seeking to show Defendant's knowledge of the inefficacy of its "No Diving" signs.") (emphasis added).

For the reasons discussed previously, the prior incidents disclosed in this case are more than sufficient to create a genuine issue of material fact on notice, and CARNIVAL'S motion for summary judgment must be denied.

*c. GOODENOUGH'S pending motion for sanctions for spoliation of evidence [DE 35].*

GOODENOUGH also notes that she has a pending motion for sanctions for spoliation of evidence, [DE 35], which this Honorable Court has set for hearing on April 1, 2025. [DE 40]. This motion for sanctions seeks an adverse inference specifically on the issue of notice, because CARNIVAL'S spoliation of the subject lip deprived GOODENOUGH of the ability to have an expert meaningfully test them to see if they complied with industry standards and guidelines.

Industry standards can provide evidence that a ship owner should have known of a dangerous condition. As the court in *Holderbaum* eloquently summarized,

"[t]he law in the Eleventh Circuit, as established by the former Fifth Circuit,[1] is that advisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence." Cook,

---

[1] "We hold that the decisions of the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or the 'old Fifth'), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit." *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

> 2012 WL 1792628, at *3 (citing Muncie Aviation Corp., 519 F.2d 1178; Frazier, 568 F.2d 378); see also Giorgio, 2006 WL 1042003, at *2. Such guidelines are also probative of the defendant's constructive knowledge of the allegedly hazardous condition. See Cook, 2012 WL 1792628, at *3; Donlon, 2011 WL 6020574, at *6.
>
> . . .
>
> Based on the IMO recommendation and the record evidence, a reasonable jury could conclude that the handrail was too large, hazardous, and that Defendant knew it was too large and hazardous. See Muncie Aviation Corp., 519 F.2d at 1181 (holding that to the extent the defendant's pilot failed to consult advisory materials issued by the Federal Aviation Administration, or failed to follow their recommendations, "the jury could permissibly infer that he failed to meet the appropriate standard of due care"); Frazier, 568 F.2d at 381–82 (holding that the district court erroneously excluded testimony concerning violations of industry standards to establish the defendant's negligence); see also Donlon, 2011 WL 6020574, at *6 (denying summary judgment motion filed by houseboat manufacturer in lawsuit filed by person who fell down the stairs of a houseboat, holding that non-binding standards promulgated by the ASTM were admissible because a jury could use the evidence to conclude that the stairs "were defectively designed" and because the standards put defendant "on constructive notice of the potential danger of the stairs").

*Holderbaum v. Carnival Corp.*, 87 F. Supp. 3d 1345, 1356-57 (S.D. Fla. 2015) (quoting *Cook v. Royal Caribbean Cruises*, Ltd., No. 11-20723-CIV, 2012 WL 1792628, at *3 (S.D. Fla. May 15, 2012) ("Defendant seeks to exclude the standards/guidelines at issue because they are not mandatory, do not have the force of law and are not always directly applicable to maritime conditions. But the law in the Eleventh Circuit, as established by the former Fifth Circuit, is that advisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence.") (emphasis added); *see also Andersen v. Royal Caribbean Cruises Ltd.*, No. 19-CV-24639, 2021 WL 2414151, at *9 (S.D. Fla. June 14, 2021) (citing *Bunch v. Carnival Corp.*, 825 F. App'x 713, 715-16 (11th Cir. 2020)).

As set out in her pending amended motion for sanctions for spoliation of evidence, GOODENOUGH seeks an adverse inference on the issue of notice due to CARNIVAL'S spoliation of the subject lip. [DE 35 at pp. 6, 9]. Therefore, if GOODENOUGH'S motion for sanctions for spoliation of evidence is granted, CARNIVAL's motion should be denied for this reason as well.

## IV. THERE IS SUFFICIENT EVIDENCE OF CARNIVAL'S INVOLVEMENT IN THE DESIGN OF THE SUBJECT LIP

GOODENOUGH has evidence that CARNIVAL not only approved of this dangerous carpet, tile, and lip design, but actively directed its design. As CARNIVAL'S corporate representative testified,

Q. Okay. Carnival isn't blaming the whatever -- well, let me ask you this. Was any other company involved in the installation of that, I guess, carpet and the transition plate and all that whole configuration that was there at the time of Ms. Goodenough's incident? Was anybody other than Carnival involved in that installation?

A. I'm not sure if the actual installation during dry dock might have been done by contractors. The carpet and the tile were installed in 2018 during a dry dock. So, while **we selected the materials and it was our refurbished departments that were involved in all of that**, I'm not sure who actually installs the tile and the carpet. It might be contractors that are brought on board for dry dock purposes.
. . .
Q. Right. Okay. But even if it was contractors, they would have been working solely at the instruction of Carnival and as agents of Carnival. And that wouldn't change in any way the ownership and operation responsibility of the area or of Carnival's, I guess, duty to have this installed in a safe manner, would it?
. . .
THE WITNESS: No, I don't believe so. As far as being agents of Carnival, I'm not sure what the relationship would be. But again, **it's all -- dry dock is planned by our refurbishment department and that's all at the direction of our refurbishment departmen**t, as far as I understand.

BY MR. HAYASHI:
Q. And again, Carnival isn't taking the position that anything that might have happened during the dry dock, like by a third-party contractor or otherwise, is somehow responsible for this?

A. No.
. . .
So, as I said, this is done in other vessels as well. So it's something that's pretty standard across the fleet. **But I can't give you an exact name of who made that decision. It falls within the refurbishment department**.

Q. Is it correct that there's really no way for Carnival to be able to tell because there really isn't any one particular person who would have made the decision?
A. I mean, again, it falls within the department. So I'm not really sure if just one person makes that decision. They make the decision as a department.

Q. Right. So in other words, there is no answer to the question which specific one person made the decision to include this? There's no answer to that because it's not just one person; is that correct?

**13**
**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**

A. Correct.

See Deposition of CARNIVAL'S Corporate Representative, Monica Borcegue, [DE 37-3 at 8:16-11:4, 70:10-71:2] (emphasis added).

Contrary to CARNIVAL'S arguments, GOODENOUGH does not need to present evidence that a cruise line directly participated in the design of the dangerous condition. All that is required is **evidence that a cruise line approved of a negligently designed condition**. *See Hoover v. NCL (Bahamas) Ltd.*, No. 19-22906-CIV, 2020 WL 5834742 at *2 (S.D. Fla. Sept. 29, 2020) (finding that evidence of approval of the faulty design at issue was sufficient to establish a genuine issue of material fact in a negligent design/approval claim, even where there was no evidence of direct participation in the design itself); *see also Fylling v. Royal Caribbean Cruises, Ltd.*, No. 18-CV-21953, 2019 WL 8275158, at *4 (S.D. Fla. Dec. 10, 2019); *see also Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5583966 at *4 (S.D. Fla. Aug. 16, 2013).

Moreover, pursuant to *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1170 (11th Cir. 2021), this evidence is sufficient to establish vicarious liability on the part of CARNIVAL, and notice is not required in vicarious liability claims. See *Id.* ("In short, we hold that a passenger need not establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees. Consequently, the district court erred in granting summary judgment based on Yusko's inability to establish that NCL had actual or constructive notice of a risk-creating condition."); see also [DE 22 at pp. 3-4] ("Defendant insists Plaintiff must, and fails to, identify a specific tortfeasor. . . . Notwithstanding these arguments, Defendant concedes there appears to be "no binding case law requiring that level of specificity" for a vicarious negligent design claim. (Id. 9 (citation omitted)). The Court agrees with this concession — the undersigned sees no reason to require Defendant's suggested level of specificity.") (citing *Haggerty v. Carnival Corp.*, No. 24-cv-20367, 2024 WL 3415789, at *10 (S.D. Fla. June 25, 2024) (alterations added), report and recommendation adopted, No. 24-20367-Civ, 2024 WL 3411641 (S.D. Fla. July 15, 2024)); *see also Willis v. Royal Caribbean Cruises, Ltd.*, 77 F.4th 1332, 1339 (11th Cir. 2023) ("'[T]he notice requirement does not—and was never meant to—apply to maritime negligence claims proceeding under a theory of vicarious liability.'"); *see also Hunter v. Carnival Corp.*, 609 F. Supp. 3d 1305, 1310 (S.D. Fla. 2022).

The evidence in this case is certainly sufficient to establish a genuine issue of material fact on the issue of negligent design, and CARNIVAL'S motion should be denied.

**WHEREFORE**, Plaintiff, MARY GOODENOUGH, respectfully requests that this Honorable Court deny Defendant CARNIVAL CORPORATION's motion for summary judgment and grant all other relief this Honorable Court deems just and appropriate.

<u>**CERTIFICATE OF SERVICE**</u>

We hereby certify that on March 17, 2025, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF. We also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,
**ARONFELD TRIAL LAWYERS**
1 Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
Tel: (305) 441- 0440
Fax: (305) 441 - 0198
Attorneys for GOODENOUGH

By:     */s/ Matthias M. Hayashi, Esq.*
Matthias M. Hayashi, Esq.
Florida Bar Number: 115973
mhayashi@aronfeld.com
Spencer Marc Aronfeld, Esq.
Florida Bar Number: 905161
aronfeld@aronfeld.com
Abby Hernández Ivey, Esq.
Florida Bar Number: 1002774
aivey@aronfeld.com