UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-cv-20289-ALTONAGA/GOODMAN

NANCY GOULD,

      Plaintiff,

v.

CARNIVAL CORPORATION,

      Defendant.

_____/

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S OMNIBUS MOTION IN LIMINE**

Plaintiff, NANCY GOULD, by and through her undersigned counsel, responds to Defendant, CARNIVAL CORPORATION's, Omnibus Motion in Limine [DE 73], and in support of her response, states as follows:

**1.      The Court Should Not Exclude Evidence of Prior Guest Comments**

Defendant seeks to exclude two guest comments describing prior incidents of passenger fights, one from December 24, 2017 on the Carnival *Panorama* which states "Guest had a fight on the gangway while debarking [sic] the ship in Tampa[,]" and another on the Carnival *Liberty* from December 15, 2016 which states "Claims a fight broke out, woman almost pushing someone off the gangway." See Defendant's Supplemental Answer to Plaintiff's Initial Interrogatory No. 8, attached hereto as Exhibit 1, at p. 3. Plaintiff seeks to introduce these comments to show that Defendant was on notice of the risk creating condition posed by passenger fights.

CASE NO. 19-cv-20289-ALTONAGA/GOODMAN

**A. Legal standard and factual background**.

Evidence of a substantially similar incident is sufficient to establish that a Defendant was on notice of a risk creating condition. *See, e.g., Beretta v. Home Lines, Inc*., No. 88 CIV. 7436 (LBS), 1990 WL 91737, at *3 (S.D.N.Y. June 26, 1990) (observing that one accident is sufficient to a create question of fact on notice). When evidence of similar incidences is used to establish notice, "the rule requiring substantial similarity of those accidents to the accident at issue should be relaxed." *Jackson v. Firestone Tire and Rubber Co.,* 788 F. 2d 1070, 1083 (5th Cir. 1986); *Schmelzer v. Hilton Hotels Corp*., 2007 WL 2826628, at *2 (S.D.N.Y. 2007).

In *Jones v. Otis Elevator Co*., 861 F.2d 655, 661-62 (11th Cir. 1988), the 11th Circuit held that evidence of prior incidents in which an elevator had been found shut down without an actual rider or accident were nevertheless admissible to establish the company's notice of potential problems in a subsequent lawsuit by a passenger, who was injured when the elevator did not stop at the ground level, but instead hit the bottom of the elevator shaft several times causing injuries. In *Sorrels v. NCL (Bahamas) Ltd*., 796 F.3d 1275 (11ᵗʰ Cir. 2015), the Eleventh Circuit held that "[t]he 'substantial similarity' doctrine does not require identical circumstances, and allows for some play in the joints depending on the scenario presented and the desired use of the evidence." *Sorrels*, 796 F.3d at 1287–88 (citing *Borden, Inc. v. Florida East Coast Railway Co*., 772 F.2d 750, 752 (11th Cir. 1985)).[1]

> For a prior incident to be substantially similar, "'[t]he conditions surrounding the ... incidents' need only be '**similar enough** to allow ... a reasonable inference concerning [Defendant's] ability **to foresee this type of [accident]** and its

---

[1] While it is true that the 11th Circuit upheld the District Court's ruling that the prior incidents were not substantially similar, it did so under the abuse of discretion standard, and it appears likely, based on this reasoning, that it would have found that the prior incidents were similar if it was exercising its own discretion. At the very least, it seems as though the 11th Circuit certainly would have upheld a finding that the incidents were sufficiently similar had the District Court exercised its discretion and made the opposite ruling.

results.'" *Williford v. Carnival Corp.*, No. 17-21922-CIV-Cooke, 2019 WL 6250824, at * 3 (S.D. Fla. Nov. 22, 2019) (quoting *Sorrels v. NCL* (Bahamas) Ltd., 796 F.3d 1275, 1280 (11th Cir. 2015)). "The substantial similarity doctrine does not require identical circumstances." *Sorrels*, 796 F.3d at 1287.

*Taylor v. Royal Caribbean Cruises Ltd.*, No. 18-CV-24093, 2020 WL 554547, at *3 (S.D. Fla. Feb. 4, 2020) (emphasis added).

Here, prior to Plaintiff's incident, while passengers were on the pier returning to the ship, a "man suddenly stopped and punched his wife/girlfriend in the head, all of her belongings went flying and the incident caught the attention of many of the other passengers on the pier's attention [sic]." [DE 19 at ¶¶14]. Then, "while Plaintiff and her daughter were conversing, the male had another aggressive outburst, and violently pushed his own wife[/girlfriend] into Plaintiff knocking her down the gangway while in the process of standing in line while trying to board[.]" [DE 19 at ¶¶20-22]. As such, since the two prior guest comments describe fights on the gangway to two of Defendant's ships, and since **one comment explicitly mentions that someone was almost pushed off the gangway**, the circumstances certainly are similar enough for Defendant **to have foreseen this type of [accident]**." *Williford*, 2019 WL 6250824, at * 3 (quoting *Sorrels*, 796 F.3d at 1280) (emphasis added).

**B. Application of the legal standard to the facts of this case and similar cases**.

In *Johnson v. Carnival Corp.*, No. 07-20147-CIV, 2007 WL 9624460, at *1 (S.D. Fla. Dec. 18, 2007) (Ungaro, J.), another court in this district heard similar arguments from Defendant, specifically.

> that the prior incidents are not sufficiently similar to be admissible at trial because (1) the pools in which the accidents took place have slightly different dimensions from the subject pool, (2) the circumstances surrounding such accidents were not identical to those in the case at hand, and (3) the prior accidents took place up to twenty years ago. (Def.'s Mot. 7-8.) Defendant adds that only one of the prior cases involved a spinal injury resulting from a dive into a pool. (Def.'s Mot. 8.)

According to Plaintiff, such prior incidents would be introduced to show that Defendant was on notice that passengers engage in dives into Defendants' shallow pools despite the "No Diving" signs on its ships. (Pl.'s Resp. 4.) In this Circuit, evidence of similar incidents can be admissible to show a party was on notice if conditions substantially similar to the occurrence in question caused the prior accident and if the prior incidents are not too remote in time. *See Ramos v. Liberty Mutual Ins. Co.*, 615 F.2d 334, 338-39 (5th Cir. 1980); *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988). Plaintiff asserts that the incidents are similar to the incidents at hand because all involve passenger dives into reasonably similar shallow pools onboard Defendants' ships with no lifeguard present in contravention of "No Diving" signs. (Pl.'s Resp. 4-5.) The Court agrees. Plaintiff may properly introduce evidence of such prior incidents to support his theory that Defendant was aware that passengers have routinely dived into the shallow pools on its ships despite the presence of "No Diving" signage nearby. That the incidents range in time over the past twenty years does not make them too remote; actually it could indicate that Defendant has been aware of such violations of its "No Diving" policy for many years. **It is also inconsequential that very few of the prior incidents resulted in serious injury** because Plaintiff is only seeking to show Defendant's knowledge of the inefficacy of its "No Diving" signs.

*Johnson*, 2007 WL 9624460, at *1 (emphasis added) (Ungaro, J.) (emphasis added). As the court

in *Whelan v. Royal Caribbean Cruises Ltd.* succinctly stated,

The Eleventh Circuit has held less similar incidents to be "substantially similar" for the plaintiff's intended purpose. In the case of *Borden v. Fla. E. Coast Ry.*, 772 F.2d 750, 752 (11th Cir.1985), plaintiff sued the railway whose freight train derailed and crashed into his warehouse after vandals had damaged the signaling system. He sought to introduce evidence of a prior incident in which another of the railway's trains was affected by vandalized signals for the purpose of showing that Defendant could foresee the subject incident. *Id*. at 754. The trial court excluded evidence of the prior incident because that train was traveling in the opposite direction and did not derail. The Eleventh Circuit, finding an abuse of discretion, reversed and remanded, holding that the "two incidents were similar enough to allow the jury to draw a reasonable inference concerning" forseeability. *Id*. at 755. Likewise, the [ ] incidents offered by Plaintiff here are similar enough to allow the jury to draw a reasonable inference concerning Defendant's notice of the [ ] alleged dangers.

*Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-CV-22481-UU, 2013 WL 5583966, at *3

(S.D. Fla. Aug. 16, 2013) (Ungaro, J.) As to remoteness, the *Whelan* court also found that

Defendant is essentially arguing the merits of whether it took reasonable care to protect Decedent under the circumstances. It is for the jury to decide whether

> Defendant fulfilled its duty of care by making those modifications. The remoteness inquiry here must relate back to the purpose for which the evidence is being offered: notice. In slip-and-fall cases, courts have routinely found that incidents occurring over a span of years are not too remote in time to be admissible. *See, e.g., Fosters*, 2013 WL 1498958, at *3 (allowing evidence of incidents between 2006 and 2011); *Jacquillard v. Home Depot*, No. 410–167, 2012 WL 527418, at *3 (S.D.Ga. Feb.16, 2012) (allowing evidence of incidents between 2004 and 2008). This Court likewise [should] find[ ] that the [two] incidents Plaintiff offers into evidence, spanning from [2016] to [2017], are not too remote in time.

*Whelan*, 2013 WL 5583966, at *3 (emphasis added) (Ungaro, J.). As to whether the danger of

unfair prejudice of the priors outweighed their probative value, the *Whelan* court also found that

> [e]vidence of the prior incidents is plainly probative of the factual question of notice. Introduction of this evidence will not unduly prejudice Defendant, because Defendant can rely on evidence of remedial measures taken before the Plaintiff's accident as proof of reasonable care. Moreover, Defendant is free to argue, on the merits, that these [ ] incidents were not sufficient notice[.]

*Whelan*, 2013 WL 5583966, at *3 (emphasis added) (Ungaro, J.).

Finally, in *Fisher v. Bumbo Int'l Tr.*, No. 1:14-CV-22209-UU, 2014 WL 12042519, at *6

(S.D. Fla. Aug. 27, 2014), a non-cruise ship products liability case, the

> Plaintiffs argue[d] that their evidence of prior incidents [we]re substantially similar because the accidents occurred when children fell out of the Bumbo seat. Plaintiffs also argue[d] that the other incidents [we]re not too remote because they occurred over the course of five years prior to D.F.'s injury. Defendants argue[d] that Plaintiffs c[ould] only introduce evidence of incidents that occurred while the Bumbo seat was used on a raised surface with a Play Tray attachment that resulted in physical injury.

*Id*. at *6. And as the court in *Fisher* found,

> [t]he question of substantial similarity asks whether the other incidents are "similar enough to allow the jury to draw a reasonable inference concerning Defendant's notice" of the Bumbo seat's alleged dangers. *Whelan*, 2013 WL 5583966, at *3. The alleged dangers of the Bumbo seat are that infants can cause the seat to tip over and fall, and become injured from the fall. Accordingly, it does not matter if the fall is occurring from an elevated surface or from the ground. So long as an infant is physically injured from such a fall, Defendants are on notice that such a danger exists. Similarly, a prior incident involving a Bumbo seat without an attached play tray does not make the incident dissimilar. The play tray

Case 1:19-cv-20289-CMA Document 76 Entered on FLSD Docket 06/30/2020 Page 6 of 16

CASE NO. 19-cv-20289-ALTONAGA/GOODMAN

is not a safety feature, and with or without the play tray, prior similar incidents would put Defendants on notice that there is a danger children may fall out of the Bumbo seat.

*Id*. (emphasis added).

In fact, another court in this district found, in an ice-skating case involving a similar curated list of prior incidents with only certain information provided, that

> as noted in Plaintiff's Response, a number of the prior incident reports reflect that passengers complained that the condition of the ice caused them to fall, on ships that were of the same class as the vessel at issue in this case. See ECF No. [152] at 8-9.6 In its Reply, the Defendant again argues that the prior incidents are not similar enough to establish notice because none of the prior incidents involve the conditions in this case, including a defect or damage in the ice itself, ECF No. [158] at 5.
>
> . . .
>
> The undersigned has reviewed the descriptions provided by the Defendant regarding the prior incidents and concludes that the incidents are **similar enough to raise a genuine issue of fact regarding whether the Defendant had constructive notice that ice that was either choppy or contained gouges might present an unreasonably dangerous condition**. *Cf Taiariol v. MSC Crociere, S.A.*, No. 0:15-cv-61131-KMM, 2016 WL 1428942, *5 (S.D. Fla. April 12, 2016) (finding that falls were not substantially similar to put defendant on notice where prior incident falls occurred on defendant's ships generally, but did not reveal whether falls occurred on either metal stair "nosings" or in theater where plaintiff in that case fell). Specifically, the falls cited by Plaintiff involved "choppy ice on the Studio B ice skating rink", a fall where "there was a small hole 1cm. deep on the ice floor that [the passenger] tripped on", and three separate falls on "bumpy ice", "uneven ice" and "rough ice." In all of those falls, presumably, the injured party had ice skates on that were issued by RCL, was skating on ice that was maintained by the same equipment used in the case at bar, and was maintained pursuant to RCL's policies in the same manner that the ice was maintained in this case. Thus, Defendant had notice that the failure to maintain the ice properly, as alleged by the Plaintiff in this case might create an unreasonably dangerous condition. *See Gorczyca v. MSC Cruise, S.A.*, No. 16-15491, 2017 WL 5125561, *2 (11th Cir. 2017) (stating that proper inquiry regarding whether a cruise ship has constructive notice of an alleged dangerous condition based upon prior accidents is not whether a defendant had notice of an object or its physical specifications, but whether the defendant had notice of a risk-creating condition).

*Lebron v. Royal Caribbean Cruises, Ltd.*, No. 16-24687-CIV, 2018 WL 5113943, at *7–8 (S.D.

CASE NO. 19-cv-20289-ALTONAGA/GOODMAN

Fla. Aug. 14, 2018) (emphasis added), report and recommendation adopted sub nom. *Lebron v. Royal Carribean Cruises Ltd.*, No. 16-24687-CIV, 2018 WL 5098870 (S.D. Fla. Aug. 28, 2018).

These cases demonstrate that Defendant's attempt to distinguish Plaintiff's incident from the events described in the guest comments is flawed. Although Defendant attempts to distinguish Plaintiff's incident from these comments in a number of ways, the linchpin of its argument is that it is unclear whether the fighting described in the comments occurred between domestic partners. However, in making this argument, Defendant conveniently ignores the astounding similarities, first and foremost, the fact that **these were fights on gangways**. Moreover, the guest comment from December 15, 2016 on the Carnival *Liberty* specifically mentions that **a person was almost pushed off the gangway in the fight**. See Exhibit 1 at p. 3. Unfortunately for Plaintiff, her incident was not just a close call, since she was actually pushed down the gangway. [DE 19 at ¶¶20-22]. Regardless, Defendant glosses over the fact that because these complaints are about incidents of passenger fights on its gangways, regardless of the circumstances surrounding these fights, it knew that fights were a danger to passengers on its gangways, which should have alerted it to the need to have security that was vigilantly looking out for signs of fights that might occur on its gangways, yet it did nothing for over a year.

Moreover, Plaintiff also notes that Defendant has not actually produced the full guest comments in their original form, nor has it provided the contact information for Plaintiff to reach out to the guests who made these comments. Instead, Defendant has provided select excerpts from its database of comments in a carefully curated list in a recently served supplemental interrogatory answer. Plaintiff is in the process of compelling the full guest comments in their original form, as well as the contact information for the guests who made these comments, and as such, Defendant's motion is also premature, as it may well turn out that these prior incidents also

Case 1:19-cv-20289-CMA Document 76 Entered on FLSD Docket 06/30/2020 Page 8 of 16

*CASE NO. 19-cv-20289-ALTONAGA/GOODMAN*

involved domestic disputes (although Plaintiff reiterates that whether they were domestic disputes or not does not make them any less strong evidence of Defendant's notice). As such, for all the reasons discussed, Defendant's Motion in Limine should be denied.

**2.** **Plaintiff should not be precluded from testifying to statements made by her doctors regarding her medical diagnoses and treatment.**

Next, Defendant moves to exclude statements made by Plaintiff's doctors regarding her medical diagnosis and treatment as alleged hearsay. However, Defendant is mistaken.

The main case Defendant relies on, *Gong v. Hirsch*, does not actually support its position, since it dealt with a patient's conclusion regarding the patient's own medical diagnosis. As the court in *Gong* found,

> [u]nder this standard, this post-occurrence statement cannot be admitted. The statement does not reveal symptoms, objective data, surrounding circumstances or any similar factual data that a reasonable physician would consider relevant in the treatment or even diagnosis of a medical condition. Rather, **it expresses a patient's conclusion as to the appropriate medical diagnosis**—hardly a matter upon which an expert in the field could rely in rendering an opinion. Thus, we conclude that there was no abuse of discretion in the district court's refusal to admit the letter under Rule 803(4).

*Gong v. Hirsch*, 913 F.2d 1269, 1274 (7th Cir. 1990). Other than decisions decided in the 1930s, *United States v. Buck*, 70 F.2d 1007 (5th Cir. 1934), and Florida state court criminal law, *Harris v. State*, 37 So. 3d 285, 287 (Fla. Dist. Ct. App. 2010), Defendant cites no other authority in support of its position. Perhaps that is because, as the Eleventh Circuit found,

> [w]e further conclude that the district court did not err by admitting C.M.'s hospital records from Windmoor Healthcare and the testimony of Nurse Daniels. Statements made for medical diagnosis or treatment "are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness." Fed.R.Evid. 803(4) ("The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness.... A statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause."). The advisory committee notes explain that Rule 803(4) "**extends to statements as to causation, reasonably pertinent to [purposes of diagnoses and treatment]**.... Statements as to fault would not

*CASE NO. 19-cv-20289-ALTONAGA/GOODMAN*

> ordinarily qualify under this latter language. Thus a patient's statement that he was struck by an automobile would qualify but not his statement that the car was driven through a red light." Fed.R.Evid. 803(4) advisory committee's note (citations omitted).
>
> In *United States v. Belfast*, 611 F.3d 783, 819 (11th Cir.2010), we held that the district court **did not abuse its discretion in admitting into evidence unredacted medical records that contained statements by medical professionals indicating that the victim's wounds and burns resulted from abuse or torture (as opposed to, for example, a vehicular or workplace accident)**. We explained that these statements were admissible because they did not assign any fault or suggest that the "abuse" or "torture" met the legal or statutory definition of these terms.

*United States v. Williams*, 578 F. App'x 872, 876 (11th Cir. 2014) (emphasis added). Defendant has likewise offered no evidence that the highly probative opinions of her doctors somehow outweigh a danger of unfair prejudice to Defendant, and the mere fact that Plaintiff's doctors may agree with her rather Defendant is not adequate prejudice to grant Defendant's motion. As such, Defendant is plainly wrong on this issue, and its Motion in Limine should be denied.

3.   **Plaintiff should not be precluded from offering testimony that Mr. Johnson and Ms. Berry were intoxicated**.

Defendant requests this Court to exclude evidence of the fighting couple's intoxication without first establishing a proper foundation for such evidence. However, Defendant fails to cite to any case law in support of its position. Contrary to Defendant's position, the law is clear that evidence of a person's intoxication is normally relevant and admissible in tort cases. *See Garay v. Carnival Cruise Line, Inc.*, 904 F. 2d 1527, 1531 (11th Cir. 1990); *Collins v. Marriot Int'l, Inc.*, 749 F. 3d 951, 956 (11th Cir. 2014); *see also Collins v. Marriott Int'l, Inc.*, 749 F.3d 951, 959 (11th Cir. 2014); *see also Frazee v. Gillespie*, 98 Fla. 582, 593 (1929) (evidence of intoxication relevant in tort case "in view of the fact that negligent and reckless conduct so frequently results from intoxication"); *see also Stewart-Patterson v. Celebrity Cruises, Inc.*, No.

CASE NO. 19-cv-20289-ALTONAGA/GOODMAN

12-20902-CIV, 2012 WL 6061750, at * 4 (S.D. Fla. Dec. 6, 2012) (holding that evidence of a plaintiff's alcohol consumption, combined with her medication, had at least some probative value even though the underlying negligence count based on plaintiff's slip and fall accident had already been dismissed on summary judgment). The *Stewart-Patterson* court also found no unfair prejudice that would substantially outweigh the probative value of evidence of the consumption of alcohol "given that people commonly drink on cruise ships." *Id.*

Defendant is unclear what evidence it is actually seeking to exclude. Perhaps the reason for this is because **this evidence of intoxication comes primarily from Defendant's own admission**. Here, Defendant's corporate representative testified that

> Carnival certainly investigated [Plaintiff's incident] alongside the port authorities and then they, on the day, **found both Mr. Berry -- I mean Ms. Berry and Mr. Johnson [(the fighting couple)] to be slightly intoxicated** from drinking ashore in Nassau. **So, they temporarily deactivated their sail and sign card so that they could not drink anymore alcohol that day** just so that they could, you know, take a step back, take a breather, and calm down.

See Deposition Transcript of Suzanne Brown Vasquez, attached hereto as Exhibit 2, at 26:3-10. As such, not only did Defendant itself make the determination that the Johnsons' were intoxicated, it actually deprived them of their liberty to purchase alcoholic beverages based on this determination. If Defendant did not want evidence of intoxication to be introduced, it should not have made this determination itself, and any prejudice to Defendant is solely due to its own investigation, not due to any speculation of Plaintiff. Defendant's argument regarding their consumption of alcohol in Nassau also misses the mark, since one of the issues is whether Defendant's security at the scene should have known of the Johnson's intoxication and/or visible impairment, and been more alert to them as a result, and the evidence that Defendant's own investigation revealed that they were intoxicated is highly probative that they should have known.

Case 1:19-cv-20289-CMA Document 76 Entered on FLSD Docket 06/30/2020 Page 11 of 16

CASE NO. 19-cv-20289-ALTONAGA/GOODMAN

As the law is clear that evidence of alcohol consumption is relevant in tort cases, and as the record establishes that the Johnsons had alcoholic beverages prior to Plaintiff's accident, Plaintiff respectfully submits such evidence should properly be considered by the trier of fact in determining liability and apportionment of fault at trial.

**4.**      <u>**This Honorable Court should follow the collateral source rule and admit Plaintiff's full medical bills.**</u>

The General Maritime Law collateral source doctrine bars a tortfeasor from mitigating damages by setting off compensation received by the plaintiff from an independent source. *Borque v. Diamond M. Drilling Co.*, 623 F.2d 351, 354 (5th Cir. 1980). *Borque* is binding in this circuit pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

In *Hillenburg v. Carnival Corp.*, "Carnival[ ] . . . [contended] 'that [if] the Plaintiff should recover on her claim, this Defendant would be entitled to a set-off, off-set and/or reduction for any and all collateral source benefits either paid or payable to the Plaintiff.'" *Hillenburg v. Carnival Corp.*, No. 16-22091-CIV, 2016 WL 5922756, at *1 (S.D. Fla. Sept. 21, 2016) (Altonaga, J.). However, **<u>this Honorable Court</u>** specifically held, "[i]n attempting to reduce the amount of damages by the amount of benefits paid or payable to the plaintiff by a collateral source, Carnival[ ] . . . runs squarely against the collateral-source rule." Id. at *1.

This Honorable Court's decision is supported by *Jones v. Carnival Corp.*, 2006 WL 8209625 (S.D. Fla. 2006), in which Judge Jordan applied the General Maritime Law Collateral Source Rule to a passenger's claim against a cruise Likewise, in *Holderbaum v. Carnival Corp.*, 2015 WL12085846 (S.D. Fla. 2015), a passenger case, Judge Lenard, likewise relied upon *Borque* and *Jones*, in applying the Collateral Source Rule.

In *Jones v. Carnival Corp.*, 2006 WL 8209625 (S.D. Fla. 2006) then district court Judge Jordan explained how *Goble* applies in a maritime case such as this:

> There is one major difference between *Goble* and this case. In *Goble*, the Court was interpreting Fla. Stat. §768.76, which abrogates the common law collateral source rule. The effect of the Court's decision was to actually reduce the tortfeasor's liability. In this case, however, the collateral source rule has not been abrogated by statute. Thus, the effect of applying *Goble*'s definition of a "collateral source payment," will be to increase the tortfeasor's liability.

*Id*. at *2. Judge Jordan explained the practical effect of his ruling:

> If Ms. Jones is permitted to present evidence that she was charged $37,054.18 in medical bills, over and above the $58,780.97 her insurer paid, then, all other things being equal, Carnival's liability for Mrs. Jones' past medical expenses will be $96,835.15. If Ms. Jones is not permitted to present evidence of the $37,054.18 contractual discount, Carnival's liability will be reduced by that amount. The $37,054.18 contractual discount is a collateral source payment to Ms. Jones. See *Goble*, 901 So.2d at 833. Thus, by excluding evidence of the $37,054.18 contractual discount, the tortfeasor's liability will be reduced by an amount the plaintiff received from a collateral source. The substantive collateral source rule, however, "denies to a tortfeasor a reduction and liability by any amounts the plaintiff receives" from a collateral source. *Phillips [v. Western Co.]*, 953 F.2d 923, 929 [5th Cir. 1992]. Thus, the substantive collateral source rule expressly prohibits me from excluding evidence of the $37,054.18 contractual discount.

*Id*. at *2 (Emphasis in original).

Indeed, the Florida Supreme Court has held that tortfeasors such as Defendant should not receive a windfall due to benefits available to the injured party, however those benefits are accrued. *Joerg v. State Farm Mutual Auto Ins. Co.*, 176 So.3d 1247 (Fla. 2015). Like Florida law, the General Maritime Law Collateral Source Doctrine bars a tortfeasor from mitigating damages by setting off compensation received by the plaintiff from an independent source. *Bourque v. Diamond M Drilling Co.*, 623 F.2d 351, 354 (5th Cir. 1980).

For all of the foregoing reasons, and in light of the Florida's Supreme Court's decision in *Joerg*, which receded from *Florida Physicians Insurance Reciprocal v. Stanley*, 452 So.2d 514 (Fla. 1984), neither the General Maritime Law on collateral sources nor Florida law on collateral sources permits Defendant to take advantage of Plaintiff's insurance as a windfall to avoid liability for Plaintiff's full, unreduced medical expenses. Defendant should not be allowed to

Case 1:19-cv-20289-CMA Document 76 Entered on FLSD Docket 06/30/2020 Page 13 of 16

benefit by virtue of the contracted rate that Plaintiff's medical insurer pays to providers within her network. Reducing the bills to the insurance rates would unfairly prejudice Plaintiff by misleading the jury to thinking her reconstructive wrist surgery was less traumatic than it actually was. It would also unfairly prejudice Plaintiff by potentially causing a jury to calculate her future economic damages at a similar rate despite there being no guarantee that Plaintiff will be insured in the future. Lastly, Defendant would benefit from another potential windfall if her non-economic pain and suffering damages would not be proportional to the ordeal she underwent if the jury mistakenly assesses the trauma she experienced based on a contractual rate her insurance carrier pays for procedures. Carnival should not stand to benefit from the fact that Plaintiff pays an insurance premium for health care. Accordingly, the jury should be informed of the full amount of Plaintiff's related medical bills and charges. Defendant's motion should therefore be denied.

**5.**     **<u>Plaintiff's expert's should not be prohibited from testifying to ultimate issues</u>**.

Defendant cites to former Fifth Circuit Precedent that experts can supposedly not testify to ultimate issues. However, an Eleventh Circuit case Defendant cites, *Hanson v. Waller*, 888 F.2d 806 (11th Cir. 1989), shows that "Rule 704 abolished the per se rule against testimony on ultimate issue of fact[.]" Id. at 812. Federal Rule of Evidence 704 provides that:

> (a) In General--Not Automatically Objectionable. An opinion is not objectionable just because it embraces an ultimate issue.
>
> (b) Exception. In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

Fed. R. Evid. 704. Since this is not a criminal case, the exception in subsection (b) does not apply. As *Hanson* shows, "[t]o be admissible under rule 704, an expert's opinion on an ultimate

CASE NO. 19-cv-20289-ALTONAGA/GOODMAN

issue must be helpful to the jury and also must be based on adequately explored legal criteria." *Hanson*, 888 F.2d at 812. In fact, the Eleventh Circuit in *Hanson* actually found that the challenged testimony was admissible. *Id.* ("Although the record does not fully reveal the district court's reasons for ruling as it did, the court could easily have concluded that the expert's opinion on whether the driver or pedestrian contributed to the accident or did anything wrong would be helpful to the jury in deciding whether either party was negligent. The questions asked the expert by counsel were not phrased in terms of inadequately explored legal criteria. We conclude that no error can be assigned to these opinions rendered by the expert witness.").

Here, Mr. Ferraro's opinions are certainly helpful to the jury, which has little knowledge of the relevant codes, industry and other standards, best practices, or other matters concerning maritime safety. Furthermore, whether such testimony is based on adequately explored legal criteria is an issue that can only be determined at trial. Therefore, Mr. Ferraro's helpful testimony may properly embrace an ultimate issue of fact, and Defendant's motion should be denied.

**WHEREFORE**, based upon the foregoing, Plaintiff, NANCY GOULD, respectfully requests this court deny Defendant's, CARNIVAL CORPORATION's, Omnibus Motion in Limine, in total, and grant any other relief that this Court deems just and appropriate.

CASE NO. 19-cv-20289-ALTONAGA/GOODMAN

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2020, I electronically filed the foregoing document with

the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served

this day on all counsel of record or *pro se* parties identified on the below Service List in the

manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF

or in some other authorized manner for those counsel or parties who are not authorized to receive

electronically Notices of Electronic Filing.

Respectfully submitted,
**ARONFELD TRIAL LAWYERS**
1 Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
Tel:  (305) 441- 0440
Fax: (305) 441 - 0198
Attorneys for Plaintiff

By:     */s/ Matthias M. Hayashi, Esq.*
**Spencer M. Aronfeld, Esq.**
Florida Bar Number: 905161
aronfeld@aronfeld.com
**Abby Hernández Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**Matthias M. Hayashi, Esq.**
Florida Bar No. 115973
mhayashi@aronfeld.com

*CASE NO. 19-cv-20289-ALTONAGA/GOODMAN*

<u>**SERVICE LIST**</u>

**WILLIAM SEITZ, ESQ.**
MASE MEBANE, P.A.
2601 S. Bayshore Drive, Suite 800
Miami, FL 33133
Telephone: 305-377-3770
Fax: 305-377-0080
Email: wseitz@maselaw.com
Email: llevitt@maselaw.com